UNITED STATES of America,
Plaintiff-Appellee,

v.

Donna Dale COFFMAN, Joan Marie
Turner, Defendants-Appellants.

Nos. 79–1760, 79–1761.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 19, 1980.

Decided Dec. 17, 1980.

Rehearing Denied Jan. 16, 1981.

Philip A. Cherner of Feuer, Flossic & Rich, Denver, Colo. (Dana L. Larson, Denver, Colo., with him on briefs), for defendants-appellants.

Carole C. Dominguin, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., with her on brief), for plaintiff-appellee.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The defendants-appellants, Coffman and Turner, seek review of judgments of conviction for violation of 21 U.S.C. § 841(a)(1) which is possession with intent to distribute a controlled substance, namely lysergic acid diethylamide, commonly known as LSD. The arrests herein followed a period of surveillance of several purchases by an undercover agent. Thereafter a warrant was issued to search the defendants' dwellings and automobiles. In connection with the arrests on January 25, 1979 a quantity of LSD was found on the defendants' premises. The indictment was returned April 12, 1979, 77 days after arrest. The trial started July 2, 1979, 80 days after indictment and 154 days after arrest.

Advanced by the defendants as grounds for reversal are the following:

1. That the Speedy Trial Act of 1974, 18 U.S.C. § 3161 et seq. was violated and that dismissal was therefore required because the trial commenced after the date specified in the statute (July 1, 1979) as the commencement of sanctions.

2. That the trial court erred in instructing the jury that judicial notice established that LSD was a Schedule I controlled substance.

3. That the evidence was insufficient to establish a valid chain of custody for certain of the exhibits.

4. That the entry and search was conducted without complying with the so-called "no knock" statute, 18 U.S.C. § 3109 (1976).

5. That the defendants were denied a fair trial because the witness sequestration order was violated, and also because the prosecution's expert failed to provide all the reports and notes for the defendants.

I.

### WERE THE SPEEDY TRIAL SANCTIONS RETROACTIVE SO AS TO RELATE BACK?

The contention is that the dismissal sanctions of the Speedy Trial Act which became effective on July 1, 1979 applied to cases pending on July 1st as opposed to cases commenced after July 1st. Defendants argue that the time started to run long before July 1st as to cases which had been processed prior to that date. Thus, the argument continues, when the July 1, 1979, effective date came along the sanction was immediately applicable.

The time periods were in effect prior to July 1, 1979 but the sanctions were not, hence the periods were merely guidelines. The probable reason for this was to accustom the authorities to the workings of the program. The Act had been phased-in over a period of five years. In the light of these background facts the defendants' interpretation is neither logical nor valid. If the case is pending July 1, 1979 the effective date of sanctions would become retroactive to various dates depending on the date that the case was commenced. The result would be confusing and would require a variety of reviews, all of which would be at odds with the plain meaning of the statute including the phase-in provision.

In our view these sanctions are first effective as to cases which are filed on and after July 1, 1979 and the recent decisions support this view. *United States v. Fielding*, 630 F.2d 1357 (9th Cir. 1980); *United States v. Carreon*, 626 F.2d 528 (7th Cir. 1980); *Government of the Canal Zone v. Martinez*, 620 F.2d 502 (5th Cir. 1980); *United States v. Vanella*, 619 F.2d 384 (5th

Cir. 1980); *United States v. Barboza*, 612 F.2d 999 (5th Cir. 1980).

It is to be further explained that the defendants have not contended there was a violation of the Sixth Amendment right nor have they cited the *Barker v. Wingo*, test 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1970). Accordingly it is unnecessary to proceed further on this issue.[1]

## II.

## IS THERE MERIT IN THE CONTENTION OF DEFENDANTS THAT JUDICIAL NOTICE WAS INAPPLICABLE TO STATUTORY SCHEDULE I LIST OF SCHEDULE I AS A CONTROLLED SUBSTANCE?

█ We conclude that this contention is lacking in merit.

On the day prior to closing arguments the trial judge was asked by the government to instruct the jury as a matter of law that LSD was a Schedule I controlled substance. Defendants argued that evidence was required to establish that LSD was a controlled substance and secondly, that it was on listed Schedule I of the statutes on the date of the offense; or, in other words, the judge should submit to the jury whether in this case the substance should be considered a Schedule I controlled substance.

The defendants' counsel made closing arguments to the effect that the government had failed to prove that LSD was on Schedule I. Thereafter, the court in its charge to the jury stated that as a matter of law LSD is a Schedule I controlled substance, but that as a matter of fact the jury must find the substance in this case to have been LSD.

\* \* \* \* \* \*

The defendants have made three arguments. They first contend that the judge could not take judicial notice that LSD as a matter of law was a Schedule I controlled substance. On this they say that only adjudicative *facts* can be judicially noticed under the Fed.R.Evid. 201.

The second argument is that if it was proper to take judicial notice that LSD is a Schedule I controlled substance that the court erred in not giving the cautionary instruction contained in Fed.R.Evid. 201(g) which provides that the court shall instruct the jury that it may, but it is not required to, accept as conclusive any facts judicially noticed.

Third, that because of the confusion resulting in defendants' counsel's argument before the jury that there must be proof of the scheduling, defendants' counsel's argument looked foolish and prejudiced the clients.

Judicial notice must be taken of relevant contents of the Federal Register. This is by statute 44 U.S.C. § 1507. That the courts are allowed to take judicial notice of statutes is unquestionable. Furthermore the statute allows the taking of judicial notice of the regulations. Consequently no error exists in instructing that LSD is a Schedule I controlled substance. *See United States v. Berrojo*, 628 F.2d 368 (5th Cir. 1980); *United States v. Gould*, 536 F.2d 216 (8th Cir. 1976); *United States v. Levin*, 443 F.2d 1101 (8th Cir.), *cert. denied*, 404 U.S. 944, 92 S.Ct. 297, 30 L.Ed.2d 260 (1971); *United States v. Spence*, 425 F.2d 1079 (5th Cir. 1970). In *United States v. Gould, supra*, the court said:

> It is clear that the reach of rule 201 extends only to adjudicative, not legislative, facts. Consequently, the viability of the defendants' argument is dependent upon our characterization of the fact judicially noticed by the District Court as adjudicative, thus invoking the provisions

---

1. The statute in question has since been amended to extend the effective date to July 1, 1980, and to clarify that the sanctions only apply to cases commenced after that date. 18 U.S.C. § 3163 (Supp. III, 1979). The amendment became effective August 2, 1979. Prior to amendment the statute read, "(c) Section 3162 of this chapter shall become effective af-ter the date of expiration of the fourth twelve-calendar-month period following July 1, 1975." It now reads, "(c) subject to the provisions of section 3174(c), section 3162 of this chapter shall become effective and apply to all cases commenced by arrest or summons, and all informations or indictments filed, on or after July 1, 1980."

of Rule 201(g).... Legislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally, while adjudicative facts are those developed in a particular case. Applying these general definitions, we think it is clear that the District Court in the present case was judicially noticing a legislative fact.... The District Court was not obligated to inform the jury that it could disregard the judicially noticed fact. In fact, to do so would be preposterous, thus permitting juries to make conflicting findings on what constitutes controlled substances under federal law.

536 F.2d at 219–21.

"Because it is abundantly clear that [the substance] is in fact a controlled substance, the absence of the 201(g) instruction, if it is to be considered error, does not rise to the level of plain error and no request for the instruction was made at trial." 628 F.2d at 370.

### III.

### ALLEGED ERROR RESULTED FROM THE CONFUSION IN THE CLOSING ARGUMENTS.

■ The review of the transcript does not reveal that any prejudice resulted from this discussion. Part of the defendants' argument covered only one page of the transcript and most of what was said by counsel was true, i. e. that there was not evidence as to the scheduling of LSD. There was objection by the prosecutor interrupting defense counsel that the United States was relying on scheduling of LSD as a matter of law. It cannot, therefore, be said that both sides understood that the judge was not going to instruct that LSD was on Schedule I.

The court did offer the defendants an opportunity to make further arguments. They declined. Hence, the defendants have failed to demonstrate prejudice which would justify a reversal. F.R.Crim.P. 30, *United States v. Lyles*, 593 F.2d 182 (2nd Cir. 1979), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789, *cert. denied,*

*Johnson v. United States*, 440 U.S. 975, 99 S.Ct. 1545, 59 L.Ed.2d 794, *cert. denied, Holder v. United States*, 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61 (1979); *United States v. Kostoff*, 585 F.2d 378 (9th Cir. 1978).

■ There is one other matter that should be considered in the area of judicial notice. Counsel has made the point repeatedly that laws cannot be judicially noticed. We disagree. The general rule is set forth in Wigmore. Vol. 9, Wigmore on Evidence, § 2573, p. 551. The author's words are:

A court may be expected to dispense with the production of evidence on the law of its own sovereignty; or it must be credited with the knowledge of it, or at least with competent knowledge where to search for it. No evidence of it need therefore be offered and the counsel's reference during a trial to the text or copy of the statute, or informing the judge, must be regarded as a judicial license to counsel to employ that evidence which the judge would in theory seek for himself.

### IV.

### CHAIN OF CUSTODY.

■ Defendants have argued that the police lab allowed evidence, consisting of plastic bags filled with LSD saturated pieces of blotter paper, to be tested for fingerprints before the blotter paper was tested for LSD, that the chain of custody was broken. They also maintained that a real possibility exists that the blotter paper became adulterated while in the custody of the police lab. The testimony concerning the custody of the bags while out of the police lab was not allowed because the witness was inadvertently not endorsed as a government witness.

The case of *United States v. Aviles*, 623 F.2d 1192 (7th Cir. 1980) said:

The standard for the admission of exhibits into evidence is that there must be a showing that the physical exhibit being

offered is in substantially the same condition as when the crime was committed. This determination is to be made by the trial judge and may not be overturned but for a clear abuse of discretion.

Id. at 1197.

This court in *United States v. Freeman*, 412 F.2d 1181 (10th Cir. 1969) said:

The matters relating to the chain of possession of the tablets from agent Bullock to the chemist and back relate only to the weight to be given the testimony of the chemist. In the final analysis, the verdict depended on whether the jury believed agent Bullock or the defendant. The matter of credibility is for the jury, not for the appellate court.

Id. at 1183.

*See also United States v. Drumright*, 534 F.2d 1383 (10th Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327 (1976); *United States v. Gutierrez*, 576 F.2d 269 (10th Cir.), *cert. denied*, 439 U.S. 954, 99 S.Ct. 351, 58 L.Ed.2d 345 (1978).

Finally, Judge Finesilver made findings on this question also:

The court is going to make several findings at this time outside the presence of the jury. The jury has been excused. We expressly find that sufficient prudent steps have been taken to safeguard the substances against any misidentification or alteration. We find that reasonable careful steps were taken to the satisfaction of the court, and precautions were taken to preserve the identity and character of the substances. We further find that the substances that were obtained by virtue of purchase were protected against the risk of misidentification and adulteration, and that the chain of custody has been established substantially in this case, and while the safeguards were not foolproof, we find that there was a reasonable probability that they are in the same form as they were when they initially were obtained by the officers in question. We are satisfied that from the totality of all the evidence, considering the nature of the articles, the circumstances surrounding the preservation and the custody of

the drugs or the substances, the likelihood of any medlers or unlikelihood of any tampering, that the overwhelming evidence supports the admissibility in evidence of the substances in question and that the chain of custody has been established. We, in turn, and we, in part, have relied on some of the cases we have alluded to, Counsel, but also the *United States v. Lane*, [591 F.2d 961 (D.C.Cir.1979)] case with the intent we elicit the testimony, and we are satisfied there is no evidence of any adulteration or misidentification or any irritants or any contamination of the Exhibits, or that they have been confused with anything with any other Exhibits that were examined. Further, we are satisfied that reasonable steps were taken to insure the integrity of the substances, and that the chain of custody has been established to our satisfaction under reported cases of this circuit and the D.C. Circuit. (Vol. IV: 325–326).

The findings dispel any and all possible concern. Defendants' argument must be rejected.

## V.

### ILLEGAL SEARCH.

■ The defendants make an additional argument regarding the entry by the police and agents into one of the defendants' residences. There is a conflict as to whether the agents opened the door unannounced and violated the "no knock" statute, 18 U.S.C. § 3109 (1976). One of the officers contended that the door was being opened from the inside as someone was leaving and the agents pushed the door open the rest of the way in order to make the arrest. There is testimony that the agents shouted "police" or "federal agents" while the officers were near the front door of the house, but the same officer cannot say with specificity what the order of events was because he was standing in the street near a van which had its motor running.

Prior to the arrests the agents were informed that weapons were on the premises and as it developed a loaded .38 calibre

derringer was found in the purse of one of the defendants.

In *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) the court made clear that police or agents must announce their purpose and authority before making their way into a dwelling. The same case, however, leaves open the conditions in circumstances like the present.

> However, whether or not 'exigent circumstances' would excuse compliance with § 3109, this record does not reveal any substantial basis for excusing the failure of the agents here to announce their authority and purpose. The agents had no basis for assuming petitioner was armed or might resist arrest, or that Jones was in any danger. Nor, as to the former, did the agents make any independent investigation of petitioner prior to setting the stage for the arrest with the narcotics in his possession.

Id. at 591, 88 S.Ct. at 1759.

We are mindful that firearms were present in the house. The trial judge made findings relative to the conflicting testimony on the subject of the search. In view of these facts it cannot be said that the entry for the purpose of making the arrest was improperly carried out. The trial court's findings on this matter follow:

> We deny the motion to suppress the evidence to defendant Coffman, and we have considered the fact that the search was improper, that she has not shown the court that the door was broken down. However, apparently the door was pushed open.

> We are of the view that there is no activity on the part of the officers that would shock the conscience of the court to hold that there was a Fourth Amendment violation in this case.

> We have considered the implications of the case of *Sabbath v. United States*, 391 U.S. 585 [88 S.Ct. 1755, 20 L.Ed.2d 828]. We are of the view that in all particulars that there was no impropriety in the execution of the warrant, the search made, the inventory therein. [sic]

## VI.

## ERROR ALLEGEDLY FLOWING FROM DISCOVERY AND SEQUESTRATION OF DOCUMENTS.

■ The defendants have argued that they were denied a fair trial because of the fact that a government expert failed to give the defense copies of all of the reports. They further say that there was a violation of the sequestration of witnesses.

The government contends that it made a good faith effort to comply with Rule 16, F.R.Crim.P. This provision required the government to produce reports known to exist or, which with reasonable diligence, become known. Apparently the government was unaware that the expert had not turned over all his reports. The only missing ones were thin layer chromatography exhibits. Defendants' counsel requested that the expert's testimony be stricken. The trial court denied the request. The court noted however prosecutorial indiscretion and impropriety. The court said that:

> it recognized that this should not be left up to the chemist, but I think this should be done by the attorneys. The attorneys work together, not that counsel has to knock on doors throughout the city to try to get this information. However, the court will make a statement if you feel you have been hampered in this presentation, at such time as the case should go up, should the court deny your motions, the court will give you the afternoon to talk it over with your experts and analyze these documents and speak to Mr. Hagney [the expert in question whose exhibits were not delivered]. The court will allow him to be recalled if necessary.

> MR. CHERNER: Fine.

> THE COURT: Instructs you that the 5th of July, the court will agree with that. I recognize there have been some inadequacies presented to Counsel for this information, but there is nothing that's not being done with withholding any information. It's not been done maliciously by the government.

> MR. CHERNER: Agreed.

THE COURT: And I will give you time pending preparation to go on Thursday. If you want additional time to prepare or to recall Mr. Hagney. You can talk to him after.

MR. CHERNER: I appreciate your courtesy. Unfortunately, I believe that the damage is already done in the questions I asked him. I don't think there is anything I can do to cure it. It would probably make the damage worse.

The trial court was correct in noting the indiscretion of the government, but a reading of the transcript does not reveal that the damage was as complained of by the defendant. True, there was some confusion which the jury undoubtedly observed but the judge was quick to prevent discussion of the matter in open court whereby the jury could overhear it. It is not apparent that there is prejudice. The trial court's offer to allow time to the defense to study the documents, although declined, was an appropriate remedy and it solves the problem. In fairness the court extended its recess to allow the parties time to check over the exhibits so as to make sure all others were provided to defendants. That the remedy or the sanction which is appropriate in circumstances such as this is left to the discretion of the trial court. *United States v. Heath*, 580 F.2d 1011, 1019 (10th Cir. 1978); *United States v. Bockius*, 564 F.2d 1193 (5th Cir. 1977); *Babb v. United States*, 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979).

 Counsel for defendants, in the course of cross examination of the witness Giliotti, who was one of the agents involved in the arrest, brought out that during the immediately preceding recess another agent had picked up one of the exhibits, the bag of LSD, and had taken it out of the courtroom to ask Giliotti if the initials appearing on the exhibit were those of Giliotti. The court determined that since this was the full extent of the violation, there having been no substantial alteration of the exhibit it should be admitted. The whole investigation by the court into the matter was carried out in the presence of the jury.

Defendants' argument is that it was improper to admit the evidence in violation of the sequestration order, but have not shown what actual prejudice existed. *United States v. Miller*, 499 F.2d 736 (10th Cir. 1974) expressed the rule as follows:

"Where there has been a violation of the exclusionary rule it is not error to deny a motion for mistrial where no prejudice has resulted from the violation."

Id. at 742.

For the reasons set forth in *United States v. Miller, supra*, we conclude that the defendants' argument is lacking merit. *United States v. Strauss*, 473 F.2d 1262, 1263 (3rd Cir. 1973).

No substantial error has been shown. We therefore conclude that the judgment of the district court should be and the same is hereby affirmed.