UNITED STATES of America,
Plaintiff–Appellant,

v.

Norman D. JENKINS, Defendant–Appellee.

No. 92–5640.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 30, 1992.
Decided Feb. 16, 1993.

Geoffrey Robert Garinther, Asst. U.S. Atty., Baltimore, MD, argued (Richard D. Bennett, U.S. Atty., on brief), for plaintiff-appellant.

Denise Benvenga, Asst. Federal Public Defender, Federal Public Defender's Office, Baltimore, MD, argued (Anthony R. Gallagher, Acting Federal Public Defender, on brief), for defendant-appellee.

Before RUSSELL and WILKINSON, Circuit Judges, and MORGAN, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

WILKINSON, Circuit Judge:

This case requires us to determine whether particularized suspicion was necessary to search appellee on a closed military base. Concluding that it was not, we reverse the district court's order suppressing the evidence obtained from the search.

## I.

Andrews Air Force Base is a closed military base, to which civilian access is strictly limited. A chain-link fence topped with barbed wire encircles the base; Air Force security police and guard dogs patrol the base at all times. This security is necessary because the President and Vice–President of the United States fly in and out of Andrews, and because it is the site of the Air Force Systems Command, where highly classified weapons systems are researched and developed.

Civilians can enter Andrews Air Force Base through five perimeter gates: the North Gate; the Main Gate, also on the north side; the Pearl Harbor Gate, on the east side; the Virginia Gate, on the south side; and the Air Force Systems Command Gate, or West Gate. The security police monitor all five gates, and screen vehicular and pedestrian traffic. At each gate, the following 3 × 5 sign faces incoming traffic:

### WARNING

*U.S. Air Force Installation*

It is unlawful to enter this area without permission of the Installation Commander.

*Sec. 21, Internal Security Act of 1960; 50 U.S.C. 797*

While on this installation all personnel and the property under their control are subject to search.

Katrina Jenkins is an airman first class who works at Malcolm Grow Hospital on Andrews Air Force Base. While at work on the afternoon of June 18, 1992, she received a phone call from her estranged husband, Norman Jenkins. Mr. Jenkins voiced his frustration with their divorce and child custody dispute, and concluded the call by declaring, "I'm going to blow your fucking head off—I'm on base." Ms. Jenkins then called security and requested that someone escort her to her car. As she was leaving the hospital with the officer, she spotted her husband sitting in his car across the street from the exit. When Mr. Jenkins noticed that Ms. Jenkins was accompanied by a security officer, he immediately drove out of the parking lot. The officer radioed ahead, and Mr. Jenkins was arrested at the gate. The police found six cartridges on Jenkins' person, whereupon he told them that he had a gun in the car. A search of the car revealed a .357 Magnum, nineteen other cartridges, and letters indicating that Jenkins intended to kill his wife and then commit suicide.

Jenkins was subsequently indicted for attempted murder, 18 U.S.C. § 1113, and for use of a firearm during the commission of a felony, 18 U.S.C. § 924(c). Before trial, Jenkins moved to suppress the evidence that the police had obtained during his arrest. The district court granted this motion, finding that the base police did not have probable cause to suspect Jenkins of attempted murder at the time of his arrest. The government moved for reconsideration, arguing that probable cause was not necessary for a search on a closed military base, and in the alternative that the police had probable cause of other crimes besides attempted murder. The court rejected these contentions. The government now appeals.

## II.

■ The gravamen of the government's appeal is that the district court erred by not recognizing an "implied consent" exception to the requirement of probable cause for closed military bases.* By entering onto the closed base, the government argues, Jenkins gave his consent to be searched at any time. Jenkins maintains that the Fourth Amendment recognizes no such sweeping exception, and that the proper accommodation for the security concerns of a military base lies in the "special needs" balancing test of *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), and *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). According to Jenkins, the special needs of a military base would be to prevent the inflow of drugs and weapons and the outflow of stolen property—none of which, he claims, would justify his search.

■ We find the "special needs" analysis unpersuasive, even on its own terms. Jenkins concedes that this analysis would entitle the base police to search a departing car as part of a routine gate check for stolen government property. This authority surely does not evaporate when the base police

learn that a particular passenger in an exiting vehicle has threatened to kill an airman.

In any event, the validity of closed base searches taken without particularized suspicion does not turn on the case-by-case application of a "special needs" or "exigent circumstances" balancing test. The case law makes clear that searches on closed military bases have long been exempt from the usual Fourth Amendment requirement of probable cause. *See United States v. Ellis*, 547 F.2d 863, 866–67 (5th Cir.1977); *United States v. Rogers*, 549 F.2d 490, 493–94 (8th Cir.1976); *United States v. Vaughan*, 475 F.2d 1262, 1264 (10th Cir. 1973); *United States v. Grisby*, 335 F.2d 652, 654–55 (4th Cir.1964); *United States v. Mathews*, 431 F.Supp. 70, 72–73 (W.D.Okla.1976); *United States v. Fox*, 407 F.Supp. 857, 859–60 (W.D.Okla.1975); *United States v. Burrow*, 396 F.Supp. 890, 898–901 (D.Md.1975); *United States v. Crowley*, 9 F.2d 927 (N.D.Ga.1922). The rationale is the same for why the base is closed in the first place: to protect a military installation that is vital to national security. Police on a closed military base confront a host of security concerns not present in an ordinary civilian locale. Andrews Air Force Base is a prime example: the President and Vice–President regularly fly in and out, and the Air Force Systems Command is located there. Such a base is an inviting target for terrorists, as well as for a hostile military strike, and a successful attack could seriously jeopardize the national welfare. "The more the public or national interest is involved, as in the case of a closed, top-security installation, the more the judiciary may weigh this in the scale in determining whether the recognized constitutional right of individuals, including civilians who seek and gain entrance to military installations, to be free from unreasonable searches has been invaded." *Burrow*, 396 F.Supp. at 900.

* The defendant contends that the government waived this argument by not raising it in the original response to defendant's motion to suppress. The district court did, however, rule upon this argument in rejecting the government's motion to reconsider. Since both parties have briefed and argued the issue before us, we will address it too.

Jenkins had no right of unrestricted access to Andrews Air Force Base; he thus had no right to be free from searches while on the base. "A base commander may summarily exclude all civilians from the area of his command. *Greer v. Spock,* 424 U.S. 828, 838 [96 S.Ct. 1211, 1217, 47 L.Ed.2d 505] (1976). It is within his authority, therefore, also to place restrictions on the right of access to a base." *Ellis,* 547 F.2d at 866. Nor did the validity of Jenkins' search turn on whether he gave his express consent to search as a condition of entering the base. Consent is implied by the "totality of all the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973). The barbed-wire fence, the security guards at the gate, the sign warning of the possibility of search, and a civilian's common-sense awareness of the nature of a military base—all these circumstances combine to puncture any reasonable expectations of privacy for a civilian who enters a closed military base.

## III.

Because the Andrews Air Force Base police did not need probable cause or particularized suspicion that Jenkins had committed a crime, the search of Jenkins' car and person was a valid one. We thus need not address whether the base police had probable cause to suspect Jenkins of attempted murder, or of other crimes. The suppression order of the district court is hereby

REVERSED.