**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN DOE 1 and JOHN DOE 2, on
behalf of themselves and all other
persons similarly situated,
                 *Plaintiffs-Appellees,*

v.

ABBOTT LABORATORIES,
                 *Defendant-Appellant.*

─────────────────

SERVICE EMPLOYEES INTERNATIONAL
UNION HEALTH AND WELFARE FUND,
on behalf of themselves and all
other persons similarly situated,
                 *Plaintiffs-Appellees,*

v.

ABBOTT LABORATORIES,
                 *Defendant-Appellant.*

No. 08-17699
D.C. Nos.
4:04-cv-01511-CW;
4:04-cv-4203-CW
(consolidated)

OPINION

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Argued and Submitted
May 13, 2009—San Francisco, California

Filed July 7, 2009

Before: Mary M. Schroeder, Stephen Reinhardt and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Rymer

8347

**COUNSEL**

James F. Hurst, Winston & Strawn LLP, Chicago, Illinois, (argued); Jeffrey I. Weinberger, Munger, Tolles & Olson LLP, Los Angeles, California, for the defendant-appellant.

Richard R. Wiebe, Law Office of Richard R. Wiebe, San Francisco, California, (argued); Christopher T. Heffelfinger, Bermand DeValerio, San Francisco, California, for plaintiffs-appellees John Doe 1, John Doe 2, and Individual Class Members.

Michael W. Stocker, Labaton Sucharow LLP, New York, New York, for plaintiffs-appellees Service Employees Inter-

national Union Health and Welfare Fund and for the Certified Class.

## OPINION

RYMER, Circuit Judge:

Do allegations of monopoly leveraging through pricing conduct in two markets state a claim under § 2 of the Sherman Act, 15 U.S.C. § 2, absent an antitrust refusal to deal (or some other exclusionary practice) in the monopoly market or below-cost pricing in the second market? Following *Pacific Bell Telephone Co. v. linkLine Communications, Inc.*, 129 S. Ct. 1109 (2009), we hold that no such claim may be brought. As the district court held to the contrary, we reverse.[1]

I

John Does 1 and 2 and the Service Employees International Union Health and Welfare Fund (collectively, "Does") represent certified classes of HIV patients and their medical plans who purchase Norvir, a drug made by Abbott Laboratories that "boosts" the effectiveness of protease inhibitors used to fight the disease. According to Does, Norvir gives Abbott a monopoly in the booster market. Norvir was originally sold as a standalone protease inhibitor, but it turned out to be more useful as a booster taken in low dosages along with other inhibitors. Abbott also sells a "boosted" protease inhibitor, Kaletra, which consists of Abbott's protease inhibitor compound lopinavir combined in a single pill with a boosting dose of ritonavir (the generic name for Norvir).

Meanwhile, Abbott competitors such as Bristol Meyers-Squibb (whose protease inhibitor is marketed as Reyataz) and

---

[1]It is understandable that the district court did not follow *linkLine* as at the time it ruled *linkLine* had not yet been decided.

GlaxoSmithKline (whose inhibitor is marketed as Lexiva), were given permission by the FDA to promote Norvir as a booster to be taken along with their own inhibitors. Once this happened, Abbott increased the price of Norvir from $1.71 to $8.57 per 100 mg, but did not increase the price of Kaletra. The effect, Does say, was to raise the total cost to the patient of boosted protease inhibitor therapies provided by Abbott's competitors (that is, when a patient uses Norvir along with a competitor's inhibitor such as Reyataz or Lexiva). In this way, Abbott allegedly leveraged its Norvir monopoly to attempt to monopolize the boosted market for Kaletra.

Abbott moved for dismissal and for summary judgment on the grounds that no § 2 claim was stated, that Does failed to show antitrust injury, and that Abbott lacked monopoly power in the boosted protease inhibitor market. The district court disagreed in a series of rulings. *See In re Abbott Labs. Norvir Antitrust Litig.*, 562 F. Supp. 2d. 1080 (N.D. Cal. 2008); 442 F. Supp. 2d 800 (N.D. Cal. 2006); *Serv. Employees Int'l Union Health & Welfare Fund v. Abbott Labs.*, No. 04-4203-CW (N.D. Cal. Mar. 2, 2005) (order denying Abbott's motion to dismiss); *Doe v. Abbott Labs.*, No. 04-1511-CW (N.D. Cal. Oct. 21, 2004) (same).

The parties then entered into a settlement agreement. Assuming approval by the district court, the agreement provides that Abbott will pay $10 million into a settlement fund and take an interlocutory appeal on condition that, if the case ends up being dismissed, Abbott will pay no more but if Does prevail, it will pay up to an additional $17.5 million depending on the degree of success. The district court approved both the settlement and interlocutory appeal, certifying three issues: (1) whether antitrust injury has been shown; (2) whether Abbott has monopoly power in the boosted protease inhibitor market; and (3) whether the below-cost pricing test for bundled discounts that we adopted in *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008), applies to this monopoly leveraging case.

Abbott timely appealed.[2]

## II

The settlement arrangement in this case implicates *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128-32 (9th Cir. 2005) (en banc), thus our jurisdiction, so we address this issue first. In *Gator*, the parties to an action for declaratory judgment reached a settlement that ended the controversy on the merits and left open only a side issue of personal jurisdiction. In those circumstances we believed the appeal was moot. Unlike *Gator*, however, we are persuaded that the merits are still at issue here. Accordingly, we have jurisdiction to proceed. *See Nixon v. Fitzgerald*, 457 U.S. 731, 743-44 (1982); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371 (1982).

As the district court's rulings were on a motion to dismiss and for summary judgment, our review is *de novo*. *E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1033 (9th Cir. 2007); *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1079 (9th Cir. 2005).

## III

Time, and the United States Supreme Court, have overtaken this case. The district court concluded that Does' claims for monopolization and attempted monopolization[3] of the

---

[2]Does' position on appeal is supported by amicus briefs by GlaxoSmithKline and a group of direct purchaser pharmacies: Meijer, Inc.; Meijer Distribution, Inc.; Louisiana Drug Wholesale Co.; Rochester Drug Cooperative, Inc.; Rite Aid Corporation; Rite Aid HDQTRS, Corp.; JCG (PJC) USA, LLC; Maxi Drug, Inc.; Eckerd Corporation; CVS Pharmacy, Inc.; Caremark, LLC; Safeway, Inc.; Walgreen Co.; The Kroger Co.; New Albertson's, Inc.; American Sales Company, Inc.; and HEB Grocery Company LP. These amici are parties to related cases against Abbott in the district court. *See Meijer, Inc. v. Abbott Labs.*, 544 F. Supp. 2d 995 (N.D. Cal. 2008).

[3]Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or

market for boosted protease inhibitors could go forward on a theory of monopoly leveraging as articulated in *Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997), and were not foreclosed by *Cascade*. In *Image Technical*, the defendant refused to sell aftermarket parts over which it had monopoly power to independent service organizations with whom it competed in the market for aftermarket services. We described the plaintiff 's theory as "monopoly leveraging" and upheld a verdict in its favor. In *Cascade*, the defendant sold a bundle or package of goods for a lower price than it charged for the goods purchased individually. We held that the exclusionary element of § 2 cannot be satisfied by reference to bundled discounts unless the discounts result in prices below an appropriate measure of the seller's costs. *Cascade*, 515 F.3d at 900-03 (citing *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., Inc.*, 549 U.S. 312, 319-20, 325-26 (2007); *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222-24 (1993)). However, since then, the Supreme Court rendered a decision in *linkLine*, a price-squeezing case, that controls the outcome here.

**[1]** In *linkLine*, independent internet service providers that competed with AT&T in the retail DSL market, and also

persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2.

To establish monopolization a plaintiff must show "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acquisition, or historic accident." *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 480 (1992).

To demonstrate attempted monopolization a plaintiff must prove "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Cascade*, 515 F.3d at 893 (citing *Spectrum Sports, Inc. v. McQuillam*, 506 U.S. 447, 456 (1993)) (internal quotations omitted).

leased DSL transport service from AT&T at the wholesale level, argued that AT&T subjected them to a price squeeze in violation of § 2. 129 S. Ct. at 1114-15. AT&T was a vertically integrated firm that sold inputs at wholesale and finished goods or services at retail. *Id.* at 1115. As such, it was a player in the DSL market at both the wholesale and retail levels, providing plaintiffs with transport service and selling DSL service to consumers at retail. *Id.* The plaintiffs contended that their profit margins were unfairly squeezed by AT&T's practice of setting high prices in the wholesale transport market while keeping retail prices for its own DSL service low. *Id.* at 1118-19. The Court held that plaintiffs could not state a claim under § 2 when the defendant was under no antitrust duty to sell the inputs to its rivals.

**[2]** In doing so, the Court reiterated the basic rule that mere possession of monopoly power and the practice of charging monopoly prices does not run afoul of § 2. *Id.* at 1118; *see Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (*Trinko*). "Simply possessing monopoly power and charging monopoly prices does not violate § 2; rather, the statute targets 'the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.' " *linkLine*, 129 S. Ct. at 1118 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). And when predatory pricing is at issue, a plaintiff must demonstrate that "(1) 'the prices complained of are below an appropriate measure of its rival's costs'; and (2) there is a 'dangerous probability' that the defendant will be able to recoup its 'investment' in below-cost prices." *Id.* at 1120 (quoting *Brooke Group*, 509 U.S. at 222-24).

**[3]** The Court analyzed each market separately. At the input or wholesale level, it found *Trinko* controlling even though *Trinko* involved the provision of "insufficient assistance" whereas *linkLine* involved a price-squeeze. *Id.* at 1119. In *Trinko*, a customer of one of Verizon's competitors claimed

that Verizon had denied competitors access to interconnection support services which impaired their ability to deliver, hence the customer's ability to obtain, local telephone service in the downstream market. *Trinko*, 540 U.S. at 407. This presented no § 2 problem for, as explained in *linkLine*, "if a firm has no antitrust duty to deal with its competitors at wholesale, it certainly has no duty to deal under terms and conditions that the rivals find commercially advantageous." 129 S. Ct. at 1119. Put differently, AT&T could have stopped providing DSL transport service without violating § 2, so it "was not required to offer this service at the wholesale prices the plaintiffs would have preferred." *Id*. At the other end of the price squeeze — the "too low" prices being charged at the retail level — the Court drew from *Brooke Group* to conclude that a price-squeeze claim should not be recognized where the defendant's price remains above cost, otherwise firms might be encouraged to raise retail prices to avoid potential antitrust liability. *Id.* at 1120. Holding that no claim was stated at the retail level as no predatory pricing was alleged, and that no claim was stated at the transport level as no antitrust duty to deal was averred, the Court concluded that "[t]wo wrong claims do not make one that is right." *Id.* at 1123. In short, there is no independently cognizable harm to competition when the wholesale price and the retail price are independently lawful.

[4] Applying *linkLine* leads us to conclude that Does' claim falls short as well. They allege no refusal to deal at the booster level, and no below cost pricing at the boosted level.[4] Does try to distance themselves from *linkLine* on the footing that their claim is for monopoly leveraging, not price squeezing, and that Abbott provides products to consumers in both the booster and boosted markets whereas AT&T provided products in retail and wholesale markets. We understand the difference, but it is insubstantial. However labeled, Abbott's conduct is the functional equivalent of the price squeeze the

---

[4]Leave to amend is not an issue because of the parties' settlement.

Court found unobjectionable in *linkLine*. Abbott sells Norvir as a standalone inhibitor and as part of a boosted inhibitor instead of selling Norvir to its competitors at a high price for use with their own protease inhibitors while attributing a lower price to the product when used as part of its own boosted inhibitor. Either way, the alleged vice is that Abbott is using its monopoly position in the booster market to raise the price of Norvir while selling its own boosted inhibitor at too low a price. And either way, this puts the squeeze on competing producers of protease inhibitors that depend on Norvir for their boosted effectiveness and consumer acceptance.[5]

Does nevertheless submit that they should be allowed to proceed because we previously embraced the principle of a free-standing monopoly leveraging claim in *Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997). However, *Image Technical* involved a refusal to deal. Read in that context and in light of *linkLine*, *Image Technical* does not save Does' claim.

**[5]** Because we believe the outcome here follows from *linkLine*, we need not discuss *Cascade*'s impact on this case or others pending in the district court. By the same token, given Does' failure to allege the first prong of the test for a § 2 price-based claim (below-cost pricing), we have no need to reach the second (dangerous probability) prong, or to address whether Does have also failed to show antitrust injury or monopoly power. We simply hold that, in light of *linkLine*, Does have not stated a § 2 claim.

REVERSED.

---

[5]Does also attempt to distinguish *linkLine* based on footnote 2 of that opinion, 129 S. Ct. at 1118 n.2. However, the footnote addresses whether AT&T had an antitrust duty to deal. Does have not alleged a refusal to deal in this case.