**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRIAN J. FARKAS, an individual, *Plaintiff-Appellant*, | No. 14-55756 |
| | D.C. No. 2:13-cv-03208-SJO-AGR |
| v. | |
| BETTY D. WILLIAMS, an individual; FRANCISCO RIOS, an individual; EMILY OBERST, an individual, *Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Submitted April 8, 2016[*]
Pasadena, California

Filed May 24, 2016

---

[*] The panel unanimously concludes that this case is suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

Before:  Barry G. Silverman and Susan P. Graber, Circuit
Judges, and Jennifer A. Dorsey,[**] District Judge.

Opinion by Judge Dorsey

---

### SUMMARY[***]

---

### Civil Rights

The panel affirmed the district court's summary judgment
and dismissal of an action brought by a civil-service
employee under *Bivens v. Six Unknown Named Agents of
Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Plaintiff, an employee at a naval base, was placed on
administrative leave and directed to participate in an on-base
interview with a naval investigator concerning a budgetary
investigation.  After he was cleared of the charges, he brought
a *Bivens* action against base administrators for employment-
related due-process and First Amendment violations, and
against the investigator for Fourth Amendment violations.

The panel first held that the Civil Service Reform Act of
1978 precludes employment-related *Bivens* claims by Non-
Appropriated Fund Instrumentality Program employees like
plaintiff, for whom Congress has provided other safeguards.

---

[**] The Honorable Jennifer A. Dorsey, United States District Judge for
the District of Nevada, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

The panel further held that plaintiff did not suffer an unconstitutional Fourth Amendment seizure when he was asked to place his belongings in a lockbox per protocol during his on-base interview with the naval investigator. The panel concluded that plaintiff impliedly consented to the storage of his belongings by voluntarily passing through an internal checkpoint in a passage-restricted military installation.

## COUNSEL

Richard Hamlish, Law Offices of Richard Hamlish, Westlake Village, California, for Plaintiff-Appellant.

Leon W. Weidman, Chief, Civil Division, and Jessica O. Cheh, Assistant Attorneys General, and Stephanie Yonekura, Acting United States Attorney, Los Angeles, California, for Defendants-Appellees.

**OPINION**

DORSEY, District Judge:

Appellant Brian Farkas was a civil-service employee at a naval base when he found himself at the center of a budgetary investigation. He was placed on administrative leave and directed to participate in an on-base interview with a naval investigator. After Farkas was cleared of the charges, he brought this *Bivens*[1] action against base administrators for employment-related due-process and First Amendment violations and against the investigator for Fourth Amendment violations. The district court dismissed the employment-related claims for lack of subject-matter jurisdiction and entered summary judgment against Farkas on his Fourth Amendment claim.

In this appeal, we consider whether the Civil Service Reform Act of 1978 ("CSRA") precludes employment-related *Bivens* claims by Non-Appropriated Fund Instrumentality Program ("NAFI") employees like Farkas, for whom Congress has provided other safeguards. We hold that it does. We also evaluate whether Farkas suffered an unconstitutional seizure when he was asked to place his belongings in a lockbox per protocol during his on-base interview with the naval investigator. We conclude that Farkas suffered no Fourth Amendment violation because he impliedly consented to the storage of his belongings by voluntarily passing through an internal checkpoint in a passage-restricted military installation.

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

## I. Procedural History

Farkas was a golf instructor at the naval base in Ventura County, California, when he discovered that the pro shop's cashier was skimming cash from the register. Farkas blew the whistle on the alleged theft only to find himself the target of a criminal investigation into "a budgetary irregularity concerning golf lesson revenue." Base administration placed Farkas on leave, and a Naval Criminal Investigative Services ("NCIS") detective investigated the theft and interviewed Farkas on the base.

Although Farkas was ultimately cleared of wrongdoing, reinstated, and given back pay, he commenced a *Bivens* action to redress the severe emotional distress he claims he suffered from the ordeal. He alleges that base administrators retaliated against him for whistleblowing and violated his due-process rights by placing him on leave without notice or an opportunity to be heard. He also alleges that the NCIS detective unconstitutionally seized him by directing him to place his keys, wallet, and loose change in a lockbox during the interview.

The district court held that it lacked subject-matter jurisdiction over Farkas's claims against the base administrators because *Bivens* claims brought by NAFI employees[2] are impliedly precluded by the CSRA.[3] And the

---

[2] NAFIs are quasi-governmental entities that are "not funded by congressional appropriation," so NAFI employees "are paid out of the earnings generated by the activities of the NAFI." *Calder v. Crall*, 726 F.2d 598, 600 (9th Cir. 1984).

[3] 5 U.S.C. § 1101 *et seq*.

court granted summary judgment for the detective on Farkas's Fourth Amendment claim, reasoning that the storage of Farkas's personal effects did not amount to a restraint on his freedom of movement to the degree associated with a formal arrest.[4]  Farkas timely appealed.  We have jurisdiction under 28 U.S.C. § 1291, review de novo,[5] and affirm.

## II.  Discussion

## A.  The district court properly dismissed Farkas's employment-related *Bivens* claims because they are precluded by the CSRA.

The Supreme Court's decision in *Bivens* authorized constitutional-violation claims against federal employees for money damages in limited circumstances.[6]  But *Bivens* claims are impliedly precluded when there are "special factors counseling" against affording a constitutional remedy.[7]  We recognized in *Moore v. Glickman* that "[t]he presence of a deliberately crafted statutory remedial system is one 'special factor' that precludes a *Bivens* remedy."[8]

---

[4] *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam).

[5] *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015); *John Doe 1 v. Abbott Labs.*, 571 F.3d 930, 933 (9th Cir. 2009).

[6] *Bivens*, 403 U.S. at 397.

[7] *Moore v. Glickman*, 113 F.3d 988, 991 (9th Cir. 1997) (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988)).

[8] *Id*.

The deliberately crafted statutory mechanism that bars Farkas's employment-related *Bivens* claims against the base administrators is the CSRA.   That Act provides a comprehensive scheme of administrative and judicial-review remedies for certain federal employees.  Congress enacted the CSRA to replace "an outdated patchwork of statutes and rules built up over almost a century."**9**  The goal was "a single unified personnel policy [that takes] into account the requirements of all the various laws and goals governing Federal personnel management."**10**  The CSRA "replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration."**11**

The fact that Congress excluded NAFI employees from the CSRA's remedial scheme**12** does not prevent the Act from precluding Farkas's employment-related *Bivens* claims.  Even inadequate statutory remedies counsel against recognizing a *Bivens* claim "if there are 'indications that congressional action has not been inadvertent.'"**13**  Applying this rule, we

---

**9** *Saul v. United States*, 928 F.2d 829, 833 (9th Cir. 1991) (internal quotation marks omitted).

**10** *Id*. (internal quotation marks omitted).

**11** *Id.* (quoting *United States v. Fausto*, 484 U.S. 439, 445 (1988)).

**12** *See* 5 U.S.C. § 2105(c).

**13** *Moore*, 113 F.3d at 993 (quoting *Schweiker*, 487 U.S. at 423); *see also Bush v. Lucas*, 462 U.S. 367, 377 (1983) (declining to recognize federal employee's First Amendment claim because the CSRA's "elaborate

held in *Blankenship v. McDonald* that the CSRA precluded a *Bivens* action by a federal court reporter who had no effective remedies under the Act, reasoning that "congressional action has not been inadvertent in providing certain remedies and denying others to judicial employees."[14]

The same is true for NAFI employees. Both circuits that have considered whether Congress's exclusion of NAFI employees from the CSRA's remedial scheme was intentional concluded that "Congress deliberately exempted NAFI employees from federal civil service rules to enable the armed services to carry out the missions of non-appropriated fund organizations with the maximum possible personnel flexibility."[15] And the Fourth Circuit specifically held in *Zimbelman v. Savage* that the CSRA's exclusivity in the federal-employment context—when combined with the availability of other safeguards—counseled against creating a *Bivens* remedy for NAFI employees who alleged that they were terminated without a name-clearing opportunity in violation of the Fifth Amendment.[16]

We find *Zimbelman* persuasive. Congress's exclusion of NAFI employees from the CSRA's remedial scheme does not

---

remedial system" provided whistleblower sufficient remedies, even though they were "not as completely effective as a *Bivens*-type action based directly on the Constitution").

[14] *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1999).

[15] *McAuliffe v. Rice*, 966 F.2d 979, 981 (5th Cir. 1992); *Zimbelman v. Savage*, 228 F.3d 367, 371 (4th Cir. 2000) (quoting *McAuliffe*, 966 F.2d at 981).

[16] *Zimbelman*, 228 F.3d at 371.

appear inadvertent; indeed, the statute expressly exempted them from the CSRA's coverage in 5 U.S.C. § 2105(c). And Farkas was not without remedies against the base administrators. Title 10 U.S.C. § 1587 grants NAFI employees whistleblower protection and vests the Secretary of Defense with the responsibility to prevent and correct retaliation against NAFI employees who report illegal or wasteful activities; the Secretary has adopted regulations to carry out that responsibility.[17] The Department of the Navy has similarly promulgated grievance procedures for NAFI employees who suffer adverse personnel actions.[18] These special factors counsel against recognizing a *Bivens* action for Farkas's employment-related claims, and we hold that the district court properly declined to do so.

## B. Farkas did not suffer an unconstitutional seizure because he impliedly consented to the interview conditions.

We turn to Farkas's claim that the NCIS detective seized him during the interview by requiring Farkas to place his keys, wallet, and loose change in a lockbox before entering the interview room. We affirm the district court's entry of summary judgment because Farkas impliedly consented to

---

[17] DEP'T OF DEF. DIRECTIVE, NONAPPROPRIATED FUND INSTRUMENTALITY (NAFI) EMPS. WHISTLEBLOWER PROT. PROGRAM, NO. 1401.03 (June 13, 2014), *available at* http://www.dodig.mil/Resources/PolicyReferences/whistleblower/DoDD_1401_03.pdf (last visited May 4, 2016).

[18] *See* DEP'T OF DEF. DIRECTIVE, PERSONNEL POLICY MANUAL FOR NAFI EMPS., CNIC 5300.2 (May 10, 2011), *available at* http://www.navymwr.org/resources/download/a549d8566b63426ba53b00df6edeaf0e.pdf (last visited May 4, 2016).

this limited restraint on his freedom by voluntarily entering the passage-restricted base and agreeing to enter the interview room.[19]

Consensual encounters between civilians and the government are "outside the ambit of the Fourth Amendment's guarantee against unreasonable searches and seizures."[20]  We have applied this principle in the context of military bases, holding that the usual Fourth Amendment analysis does not apply because visitors give their implied consent to be searched and seized when entering a military base.[21]  As we reasoned in *Morgan v. United States*, the typical trappings of a military base (e.g., "[t]he barbed-wire fence, the security guards at the gate, the sign warning of the possibility of search") "combine to puncture any reasonable expectations of privacy for a civilian" who voluntarily enters.[22]

The same trappings identified in *Morgan* were at play here.  The Ventura County naval base is a restricted-access

---

[19] *See Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1039 (9th Cir. 2000) (stating that the court may affirm on any ground supported by the record).

[20] *United States v. Redlightning*, 624 F.3d 1090, 1103 (9th Cir. 2010) (quoting *United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994)).  In his complaint, Farkas alleged that the detective also violated his Fourth Amendment rights with a pat-down search, and the district court summarily adjudicated this claim in the detective's favor.  On appeal, Farkas concedes that the search was constitutional.

[21] *Morgan v. United States*, 323 F.3d 776, 782 (9th Cir. 2003).

[22] *Id.* at 781–82 (quoting *United States v. Jenkins*, 986 F.2d 76, 79 (4th Cir. 1993)).

military base.  Each point of entry is gate-guarded and dotted with warning signs alerting visitors that access is restricted, all persons and vehicles are subject to search, the base is patrolled by military working dogs, and violators will be prosecuted.  Farkas's assertion that his consent did not extend to the storage of his personal items is belied by the objective circumstances.  Farkas passed the warning signs, met the investigator in the parking lot, and agreed to place his belongings into a lockbox before voluntarily entering the interview room.  By passing through an internal checkpoint, which the investigator was required to administer, Farkas reaffirmed by his conduct what had been established at the gate: that he impliedly consented to the possibility of a Fourth Amendment intrusion.[23]

**AFFIRMED.**

---

[23] In his brief, Farkas makes a passing reference to a possible Fourth Amendment claim arising from the taking of his fingerprints and photograph before he was allowed to leave the interview.  Because this potential issue was not developed in the brief, we deem it waived and decline to reach it.  *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("[A] bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review.").