NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUN 23 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KENT TERRY, Sr.; JOSEPHINE TERRY, in their individual capacities as the parents of Brian A. Terry, deceased, and as pending applicants to be co-Personal Representatives of the Estate of Brian A. Terry, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> WILLIAM NEWELL; JANE DOE NEWELL; GEORGE GILLETT; JANE DOE GILLETT; DAVID VOTH; JANE DOE VOTH; HOPE MACALLISTER; JOHN DOE MACALLISTER; TONYA ENGLISH; JOHN DOE ENGLISH; WILLIAM MCMAHON; JANE DOE MCMAHON; EMORY THOMAS HURLEY; JANE DOE HURLEY, <br><br> Defendants - Appellees. | No. 14-15284 <br><br> D.C. No. 2:12-cv-02659-DGC <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted March 17, 2016
San Francisco, California

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: W. FLETCHER, RAWLINSON, and HURWITZ, Circuit Judges.

The parents of deceased Border Patrol Agent Brian Terry appeal the district court's dismissal of this *Bivens* action against employees of the Bureau of Alcohol, Tobacco, Firearms and Explosives and an Assistant United States Attorney (collectively, the "Officials").

This action arises out of the notorious "Operation Fast and Furious" (the "Operation"). The Operation, designed and implemented by the Officials, allowed individuals with clean backgrounds to purchase firearms and then "gunwalk" them to Mexican cartel members. The Officials hoped that by tracking the guns, they would ultimately be able to dismantle the cartel. Agent Terry was shot and killed near the Mexico border in December 2010 by cartel operatives using firearms "gunwalked" under the Operation.

The Terrys' amended complaint alleged that the Officials violated the substantive Due Process Clause of the Fifth Amendment by knowingly creating an increased risk of danger to Agent Terry. The district court dismissed the complaint, declining to recognize a *Bivens* remedy because statutory benefits available to the Terrys were a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." We have jurisdiction under 28 U.S.C. § 1291 and affirm, albeit on a different ground.

1. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized "for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). To date, the Supreme Court has recognized a *Bivens* remedy for violations of the Fourth Amendment, *Bivens*, 403 U.S. at 389; the procedural component of the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 234 (1979); and the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 17-18 (1980). Since 1980, however, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68; *see, e.g., Bush v. Lucas*, 462 U.S. 367, 390 (1983) (no *Bivens* claim against a federal official for violation of federal employee's First Amendment rights); *United States v. Stanley*, 483 U.S. 669, 683-84 (1987) (no *Bivens* claim for injuries arising out of military service); *Schweiker v. Chilicky*, 487 U.S. 412, 420 (1988) (no *Bivens* claim against Social Security Administration officials for wrongful termination of benefits).

2. Whether to recognize a *Bivens* claim is governed by a two-pronged inquiry. First "is the question whether any alternative, existing process for protecting the [constitutional] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550. Second, even if no such process exists, "a

3

*Bivens* remedy is a subject of judgment: 'the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.'" *Id.* (quoting *Bush*, 462 U.S. at 378).

3. The district court concluded that, taken together, the benefits provided to the Terrys under the Federal Employees Retirement System, 5 U.S.C. §§ 8401, *et seq.*, the Federal Employees Compensation Act, 5 U.S.C. §§ 8101, *et seq.*, and the Public Safety Officer Benefits Act, 42 U.S.C. § 3796, constitute a convincing reason not to authorize a *Bivens* remedy.

4. These statutes ensure benefits to survivors of federal law enforcement officers regardless of wrongdoing by others. Because they neither provide a forum for adjudicating allegations of official wrongdoing nor deter unconstitutional conduct, the Terrys contend that the statutes do not amount to a convincing reason for the courts to decline to recognize a *Bivens* action. But, even assuming the district court erred in finding to the contrary, we nonetheless decline to authorize a *Bivens* remedy for the Terrys' claim. The Supreme Court has recognized "Congress' institutional competence in crafting appropriate relief for aggrieved federal employees as a 'special factor counseling hesitation in the creation of a new remedy,'" *Malesko*, 534 U.S. at 68 (quoting *Bush*, 462 U.S. at 380), and has warned us against recognizing a *Bivens* action that would raise questions of "federal

4

personnel policy," *Bush*, 462 U.S. at 380-81 (internal quotation marks omitted). "'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." *Wilkie*, 551 U.S. at 562 (quoting *Bush*, 462 U.S. at 389); *see also Farkas v. Williams*, --- F.3d ---, 2016 WL 2994810, at *2-3 (9th Cir. 2016) ("Even inadequate statutory remedies counsel against recognizing a *Bivens* claim if there are indications that congressional inaction has not been inadvertent.").

5. These warnings against the expansion of *Bivens* liability have particular force here, where the claim is that a federal law enforcement officer—whose job already subjected him to considerable danger—was placed in even greater danger by the actions and omissions of other federal law enforcement personnel. *Cf. Chappell v. Wallace,* 462 U.S. 296, 304 (1983) (declining to authorize a *Bivens* remedy for military personnel against their superior officers). Although all acknowledge that the Operation was disastrous and we assume for today's purposes that it was ill-conceived, adjudication of such claims would necessarily embroil the courts in policy determinations beyond their institutional capacity and role. The availability of *Bivens* liability against law enforcement officials when an operation proves improvident or poses unnecessary danger to other law enforcement officials could deter development of effective law enforcement strategies, and would expose federal agencies to significant financial burdens. *See FDIC v. Meyer*, 510 U.S. 471,

486 (1994) (noting the "potentially enormous financial burden" of agency liability as a special factor counselling hesitation in creation of a *Bivens* remedy). Insofar as the Terrys seek a public forum in which to assert the irresponsibility of the Officials' actions, we sympathize. But under step two of the analysis required by *Wilkie*, we are constrained to conclude that a *Bivens* action is not available for them to do so.

**AFFIRMED.**